United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TROY BARNES,

          Petitioner,

  v.

MIKE EVANS, Warden,

          Respondent.

_____/

No. C 04-0148 CW

ORDER DENYING
PETITION FOR WRIT
OF HABEAS CORPUS

INTRODUCTION

Petitioner Troy Barnes, an inmate incarcerated at Salinas Valley State Prison (SVSP) in Soledad, California, petitions for a writ of habeas corpus under 28 U.S.C. § 2254 on several grounds. Respondent Mike Evans, Warden of SVSP, opposes the petition.[1] Barnes also renews his motion for appointment of counsel, and moves for an evidentiary hearing and expansion of time to file his traverse (Docket Nos. 21, 22). The Court GRANTS Barnes' motion for

---

[1]The Court substitutes the current warden, Mike Evans, for Anthony Lamarque as Respondent.

expansion of time to file his traverse, which was filed on June 19, 2006 and considered in deciding this matter. The Court DENIES his motions for an evidentiary hearing and appointment of counsel, and DENIES his petition for a writ of habeas corpus on all of his claims.

BACKGROUND

Unless indicated otherwise, the following facts are taken from the State appellate court's unpublished opinion ruling on Barnes' direct appeal. Respondent's Exhibit C.

I. Trial

On August 21, 1998, a man wearing a disguise consisting of a hat, a wig, a fake nose and a fake goatee, and carrying a gun robbed a Wells Fargo bank in Oakland. Witnesses testified that the robber left the bank alone and drove away in a gold Mazda.

Barnes' cousin Joseph Mabrey[2] testified that he gave Barnes a ride on that day. Reporter's Transcript (R.T.) 699-700. Mabrey further testified that Barnes was carrying a bag containing twenty dollar bills and that Barnes said, "I hit one."

The money that was stolen from the bank contained a tracking device, which the Oakland police followed to Mabrey's car, a red Nissan. When the police pulled the car over, Mabrey got out of the car and surrendered.[3] Barnes slid from the passenger's seat into the driver's seat and drove away, leading the officers on a high speed chase. Several other police cars joined the chase, which

---

[2]Joseph Mabrey is also referred to as "Stacy Mabrey" in the record.

[3]Eyewitnesses testified that Mabrey was not the robber.

United States District Court
For the Northern District of California

ended when Barnes collided with a park ranger's truck and then hit a pole.  Two officers approached the car.  One officer saw that Barnes had a gun.  After telling Barnes several times to drop the gun, that officer believed that Barnes pointed the gun at the other officer.  The first officer fired his gun at Barnes until he believed that Barnes had been hit, but resumed firing at him when he saw Barnes was trying to clear a malfunction in his gun.  By that time several other officers were also shooting at Barnes. Barnes was shot and fell to the ground.[4]  Several officers converged on Barnes to subdue and arrest him.

At some point between the time Barnes was shot and lying on the ground and the time he was arrested, a bystander started videotaping the incident.  Over Barnes' objection, the court granted the prosecution's motion to exclude the videotape as prejudicial.  The parties agreed that the tape shows more than one officer engaged in "over-zealous police behavior" between the time that Barnes was on the ground and the time that he was handcuffed.[5] After Barnes was arrested, the police found in the car the money from the bank and the disguise the robber wore.

Barnes was charged by information with two counts of second degree robbery (Cal. Penal Code § 211), brandishing a firearm at a police officer (Cal. Penal Code § 417, subd. (c)), and possession

---

[4]The record demonstrates that fifty-five shots were fired at Barnes.

[5]The record demonstrates that Barnes was hospitalized and required more than one surgery as a result of multiple gunshot wounds, the impact of the car accident and being kicked by an officer.  Barnes' arm was also partially paralyzed.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

of a firearm by a felon (Cal. Penal Code § 12021).  The amended information also alleged personal use of a firearm (Cal. Penal Code §§ 12022.53, subd. (b), 12022.5), a prior prison term (Cal. Penal Code § 667, subd. (a)), and twelve strikes (Cal. Penal Code § 667(e)(2)).  A jury convicted Barnes on all counts and found true all of the sentencing enhancements.  Barnes was sentenced to an indeterminate sentence of seventy-five years to life in prison. The details of his trial as relevant to his claims for habeas relief are discussed below.

II. Appeals

On August 30, 2002, the California Court of Appeal affirmed the judgment in an unpublished opinion and rejected Barnes' claims of trial court error based on: (1) excluding the videotape made at the time of his arrest; (2) refusing to instruct the jury on use of excessive force by the police; (3) allowing identification testimony; (4) excluding expert testimony regarding eyewitness identification; (5) refusing sanctions based on the destruction, in violation of a court order, of the car Barnes was driving; (6) refusing to grant a mistrial based on alleged juror misconduct; (7) denying Barnes' motion for substitution of counsel; and (8) instructing the jurors to report misconduct by other jurors. Exhibit C.

On November 20, 2002, the California Supreme Court denied Barnes' petition for review.  Exhibit E.  On October 13, 2004, the California Supreme Court summarily denied Barnes' petition for a writ of habeas corpus, which incorporated the claims from his direct appeal and also claimed error based on (1) his sentence;

4

(2) the trial court's handling of his <u>Faretta</u> motion; (3) an additional claim of juror misconduct; (4) prosecutorial misconduct during closing arguments; (5) access to the courts; and (6) ineffective assistance of counsel.  Exhibit K.

Barnes filed an initial mixed petition including exhausted and unexhausted claims in this Court in January 2004.  He also moved for appointment of counsel and an evidentiary hearing.  The Court granted Barnes a stay pending exhaustion of the unexhausted claims in State court and denied without prejudice his motions for appointment of counsel and an evidentiary hearing.  After the California Supreme Court denied his State habeas petition, Barnes filed his first amended petition on November 16, 2004.  Barnes petitions the Court for a writ of habeas corpus on each of the grounds raised before the State courts.[6]

LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant a petition challenging a State conviction or sentence on the basis of a claim that was reviewed on the merits in State court only if the State court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

---

[6]In his traverse, Barnes concedes his claim of prosecutorial misconduct under <u>Brady v. Maryland</u>, 873 U.S. 83 (1963).  Traverse at 31.

United States District Court
For the Northern District of California

States;[7] or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Clearly established federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams (Terry) v. Taylor, 529 U.S. 362, 402-04, 412 (2000).  A State court decision may not be overturned on habeas review simply because of a conflict with circuit-based law.  Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000).  However, circuit court decisions may be persuasive authority to determine whether a particular State court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established." Id.; see also Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert. denied, 124 S. Ct 446 (2003); Moore v. Calderon, 108 F.3d 261, 264 (9th Cir. 1997).

A State court's decision is "contrary to" Supreme Court law if the State court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or reaches a different conclusion based on facts indistinguishable from a Supreme Court case.  Williams, 529 U.S. at 412-13.  A State court's decision constitutes an "unreasonable application" of Supreme Court precedent if the State court "either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way

---

[7] Both prongs of § 2254(d)(1) apply to questions of law and mixed questions of law and fact.  Van Tran v. Lindsey, 212 F.3d 1143, 1150 (9th Cir. 2000), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63, 70-74 (2003).

United States District Court
For the Northern District of California

that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Id. at 407. An "unreasonable application" of federal law is different from an incorrect or erroneous application of federal law. Id. at 412. Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. The reasonableness inquiry under the "unreasonable application" clause is objective. Id. at 409.

In determining whether the State court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest State court to address the merits of a petitioner's claim in a reasoned decision. LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000). If the State court considered only State law, the federal court must ask whether State law, as explained by the State court, is "contrary to" clearly established governing federal law. See Lockhart v. Terhune, 250 F.3d 1223, 1230 (9th Cir. 2001). If the State court, relying on State law, correctly identified the governing federal legal rules, the federal court must ask whether the State court applied them unreasonably to the facts. Id. at 1232.

In the present case, eight of Barnes' claims were addressed in State court in a reasoned decision, which primarily addressed state law. His other claims were denied summarily by the California

United States District Court
For the Northern District of California

Supreme Court.  Where the State court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a review of the record is the only means of deciding whether the State court's decision was objectively reasonable.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the State court's decision was an unreasonable application of clearly established federal law.  Id.

DISCUSSION

I.   Suppression of the Videotape Evidence

Barnes argues that the trial court violated his right to present a defense under the Sixth Amendment and his right to due process under the Fourteenth Amendment by suppressing a videotape that a bystander took of the police officers shooting at Barnes and beating him following the chase.  Barnes asserts that the tape demonstrates that the police used excessive force in his arrest, which he argues constitutes a defense to the crime of brandishing a weapon at a peace officer.  Barnes also argues that the tape demonstrates that he was unconscious at the time he allegedly brandished the weapon.

"Incorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are affected."  Whelchel v. Washington, 232 F.3d 1197, 1211 (9th Cir. 2000) (internal quotation omitted).  Therefore, the "decision to exclude certain evidence must be so prejudicial as to jeopardize the defendant's due process rights."  Id.  The Ninth Circuit

considers five factors in determining whether the exclusion affects constitutional rights: "(1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense." Id.

The State court's decision to exclude the evidence was not an unreasonable application of clearly established federal law.  At trial, defense counsel conceded that the video only recorded events after Barnes was shot and lying on the ground.  Therefore, the acts underlying the brandishing offense occurred before the taping began and the tape is irrelevant to Barnes' defense.  The exclusion of irrelevant evidence is not a constitutional violation.  Wood v. Alaska, 957 F.2d 1544, 1550 (9th Cir. 1992).

II.  Jury Instructions on Excessive Force

Barnes argues that the trial court also violated his right to present a defense when it refused to instruct the jury on excessive force.  California Jury Instructions-Criminal (CALJIC) Number 9.28 provides that an officer may not use excessive force in making an arrest and if he or she does so, the individual being arrested "may lawfully use reasonable force to protect himself."  CALJIC Number 9.29 provides that the State bears the burden of proving beyond a reasonable doubt that police officers have not used excessive force.

The State appellate court rejected Barnes' argument for the same reasons that it rejected his claims based on the suppression

of the videotape.   Because the arrest and use of force did not occur until after Barnes brandished the weapon, he could not proceed on a defense based on the officers' use of excessive force. Further, as the State court noted, Barnes' trial counsel agreed that he could not proceed on such a theory.   Therefore, Barnes' argument that the court erred by refusing to instruct the jury on his theory of self-defense is unfounded.   The Supreme Court has held that "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."   Mathews v. United States, 485 U.S. 58, 63 (1988).   Barnes fails to demonstrate that there is sufficient evidence to support this theory of defense, and his trial counsel specifically stated that he was not proceeding with such a theory.   Therefore, this claim does not provide grounds for granting the petition.

III. Identification Testimony

Barnes argues that he was prejudiced by improper identification testimony based on two grounds.   First, he argues that the pretrial physical lineup was impermissibly suggestive because he was the only individual appearing in the lineup who had been injured.   Second, he argues that the in-court identification that took place at the preliminary hearing was unduly prejudicial because he was the only injured African-American man in a jail uniform in the courtroom when he was identified.   He claims that testimony about these identifications should not have been admitted and that these procedures affected the witnesses' identification of him at trial.

United States District Court
For the Northern District of California

On October 22, 1998, a lineup was conducted at the defense's request[8] and Barnes was given the opportunity to select the other participants in the lineup, which he declined.   Counsel was present at this lineup.   Cassim Njaidi, a guard at the bank, put a question mark by Barnes' number at the lineup.   At the preliminary hearing, he identified Barnes as the man he had tentatively identified at the lineup.   He testified that he had selected Barnes in the lineup by a process of elimination.   After eliminating four individuals based on complexion or age, Njaidi chose between the remaining two based on the way that Barnes moved.   Njaidi testified that there was "something about [Barnes'] walk" that made him select Barnes. C.T. at 112.   Njaidi also noted that he knew that the suspect had been involved in a shootout and that Barnes moved as though he was in pain.

At trial, Njaidi again testified that he had selected Barnes in the lineup by a process of elimination based on complexion, height, weight and age.   In addition, the fact that Barnes appeared to be in pain played "a very small role" in Njaidi's tentative identification.   R.T. 403.   Njaidi testified that he could not positively identify Barnes at the lineup as the robber because the robber had been wearing a disguise.   At trial, he could only identify Barnes as the individual he had tentatively identified at the lineup and the preliminary hearing.

At the lineup, Leroyn McDaniel, a teller at the bank, put a question mark by Barnes' number.   At the preliminary hearing,

---

[8]As discussed below, Barnes also argues that counsel was ineffective for requesting this lineup.

United States District Court
For the Northern District of California

McDaniel testified that it was "only possible" that Barnes was the robber. Both at the preliminary hearing and at trial, McDaniel testified that she was unable to make a positive identification at the lineup because the robber was wearing a disguise at the time of the crime. Her tentative identification at the lineup was based on Barnes' build, height, weight and skin tone, the way he spoke and walked, the shape of his face and the fact that he did not have gold teeth as did some of the others in the lineup. At trial, McDaniel testified that she did not believe that anybody at the lineup appeared to be in pain. Again, McDaniel testified that she could not be sure that the man she identified was the robber.

Barnes first argues that evidence about the pretrial identifications should not have been allowed because the pretrial identifications were both unreliable and unreasonably suggestive. The Supreme Court has held that the right to due process requires the exclusion of "pretrial identification evidence obtained by a police procedure that was both suggestive and unnecessary." Manson v. Brathwaite, 432 U.S. 98, 99 (1977). "It is the likelihood of misidentification which violates a defendant's right to due process." Neil v. Biggers, 409 U.S. 188, 198 (1972).

The factors to be considered in determining the constitutionality of a witness' testimony at trial regarding a suggestive pretrial identification are set out in Biggers. These include (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5)

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

the time between the crime and the confrontation.  <u>Biggers</u>, 409

U.S. at 199-200.  The corrupting effect of the suggestive

identification itself must be weighed against these factors.  <u>Id.</u>

Applying the factors set out in <u>Biggers</u>, Barnes' argument that

the witnesses' testimony regarding their identifications at the

lineup was unreliable because the lineup was unduly suggestive is

unpersuasive.  Although Njaidi testified that the fact that Barnes

appeared to be in pain played a part in making his tentative lineup

identification, he also stated that that fact only played a very

small role in his tentative lineup identification and that each of

the individuals in the lineup was dressed as though he had the same

types of injuries as Barnes.  McDaniel testified that nobody in the

lineup appeared to be in pain, further demonstrating that evidence

of Barnes' pain was not suggestive at the lineup.

Barnes also challenges the identification testimony as

unreliable because he was the only injured African-American man in

a jail uniform in the courtroom when he was identified at the

preliminary hearing.  The Ninth Circuit has pointed out the

inherent suggestiveness of in-court identification procedures where

a witness points out the defendant who is seated at the table with

counsel.  <u>United States v. Burdeau</u>, 168 F.3d 352, 358 (9th Cir.

1999); <u>United States v. Williams</u>, 436 F.2d 1166, 1168 (9th Cir.

1970).  Although the court has advised using procedures which

minimize the prejudicial effect of in-court identifications, it has

held that "[t]here is no constitutional entitlement to an in-court

line-up or other particular method of lessening the suggestiveness

of an in-court identification . . . ."  <u>United States v. Domina</u>,

13

784 F.2d 1361, 1369 (9th Cir. 1986).  The Ninth Circuit has "held that the suggestive character of courtroom logistics [is] not unnecessarily suggestive."  Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (emphasis in original).

Further, at the preliminary hearing and at trial, each witness testified only that Barnes was the individual he or she tentatively identified during the lineup, not that he was the bank robber. This demonstrates that any suggestiveness in the lineup did not taint the in-court identification; there was no in-court identification.  This also demonstrates that the preliminary hearing was not suggestive because the witnesses did not identify Barnes as the robber, even though he was the only individual there to identify.

The State court's finding that the identification testimony was not unreliable due to unduly suggestive procedures was not an unreasonable application of federal law.[9]  This claim does not provide grounds for granting the petition.

IV.  Exclusion of Expert Testimony Regarding Eyewitness
     Identification

Barnes further claims that the State court violated his right to present a defense when it prevented him from presenting expert testimony "on the psychological effects of identification at

---

[9]Barnes also claims that his right to due process was violated by the State court's decision to allow the identification testimony because the robber was wearing a disguise and none of the witnesses was able positively identify him.  However, there is no due process issue raised by the fact that a witness cannot identify a suspect because he was wearing a disguise.  When it rendered its verdict, the jury was aware that the robber was wearing a disguise and that no witness was able positively to identify Barnes.

14

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

robberies and the psychological effects from suggestive identification procedures." Traverse at 16. However, the Ninth Circuit has specifically noted that there is no federal authority requiring the admission of expert testimony regarding the reliability of eyewitness testimony and has upheld the refusal to admit such testimony at trial. <u>Jordan v. DuCharme</u>, 983 F.2d 933, 939 (9th Cir. 1993). Therefore, the Court finds that there is no clearly established federal law with which the State court decision conflicts.

Further, Barnes is unable to demonstrate how, even if the exclusion of such evidence was in error, it could have prejudiced him. As the State points out, "the witnesses' identifications were tentative and not the heart of the prosecution's case against Petitioner." Answer at 14. Barnes' identity as the bank robber was established not by those tentative identifications, but by Mabrey's testimony, as well as by his presence in the car carrying the stolen money and the disguise used in the robbery. Trial counsel had an opportunity to cross-examine each of the eyewitnesses who testified and to clarify the circumstances surrounding their tentative identifications. The Court finds that the State courts' decisions on this point were not unreasonable applications of federal law.

V.   Claims Related to the Destruction of the Vehicle

On August 24, 1998, two days after Barnes' arrest, the car he was driving was taken to the yard of A&B Towing (A&B), a company under contract with the Oakland Police Department to tow and store vehicles that may be used as evidence. On October 30, 1998 Barnes'

15

**United States District Court**
For the Northern District of California

trial counsel obtained a court order that the vehicle be maintained as evidence, which A&B received on November 2, 1998. Nonetheless, the vehicle was sent to the wrecker and destroyed on December 9, 1998. Testimony at trial established that the car was destroyed based on an error at A&B towing, which mistakenly authorized the destruction of the car in spite of the court order in its records.

Counsel moved at the close of the prosecution's case to have the information against Barnes dismissed based on the destruction of the car. He argued that he would have inspected the car to determine whether the car was actually aimed at the park ranger's vehicle prior to the crash, that he would have taken photographs to demonstrate what the police officers actually would have been able to see happening inside the car through the rear window and to determine whether the front passenger window was rolled up or down. Counsel asserted that this evidence would have been material in impeaching the officers' testimony about the events that took place following the chase.

As an alternative to dismissal, counsel moved to have "all evidence and testimony with respect to what went on inside the vehicle . . . excluded" or to have the jury instructed that "all testimony regarding what went on at the arrest scene after the Nissan came to rest be looked at with great caution in light of th[e] willful destruction of evidence." R.T. 944-45.

The trial court denied the motion, finding that counsel failed to demonstrate either the materiality of the evidence he hoped to glean from inspecting the car or any bad faith on the part of the police department. Further, the trial court noted that counsel

**United States District Court**
For the Northern District of California

failed to inspect the car in the eleven months between the time of the court order and the close of prosecution's evidence.

Barnes now makes two claims related to the destruction of the vehicle.  First, he argues that he was denied due process by the destruction of the vehicle and that his case should therefore have been dismissed as a sanction against the prosecution for allowing the destruction of the car.  Second, Barnes argues that counsel was ineffective based on his failure to view the car before it was destroyed.  The ineffective assistance claim is discussed below with the other claims based on counsel's performance.

Under <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58 (1988), "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."  As the trial court noted, counsel failed to demonstrate that the police were involved in the decision to destroy the car, that they were aware the car had been destroyed or that they did anything but attempt to make A&B aware of the court order.  The State court's decision to deny sanctions based on the destruction of the car was not contrary to clearly established federal law.

VI.   Juror Misconduct

On September 27, 1999, juror seven sent a note to the court, encouraging it to interview juror nine because he had his mind made up from the start, made negative statements about the court, the attorneys, the defendant and the judge, and was angry at the court, the attorneys and the parties for forcing him to be there. Further, juror seven worried that juror nine was prejudicing the

17

**United States District Court**
For the Northern District of California

other jurors against Barnes.

After the court received the note, counsel for both sides stipulated to removing juror nine before the court questioned him. R.T. 1475.  Juror nine admitted that he had made general comments about the way the trial was being run, stating that he thought "if this were a business, this would be out of business."  R.T. 1479. Although the juror indicated that he was frustrated by the way the trial was proceeding, he reassured the court that he did not think his frustration had affected his ability to be fair.  In addition to his general frustration regarding the pace of the trial, juror nine also indicated that he had made a comment during the previous recess.  He recalled his statement as, "Wow, that was a real tough round for the defense.  I thought that Mr. Hing [the prosecutor] did a wonderful job as an attorney, I said I think Hing did a great job that round."  R.T. 1480.  The juror assured the court that he had only made an isolated comment and that it had not led to a conversation.

After the court removed juror nine and replaced him, defense counsel moved for a mistrial.  The court deferred ruling on the motion until after it had an opportunity to ask the other jurors if they heard juror nine's comments at any time during trial and if those comments might influence their approach to the trial.  Based on that questioning, the court predicted, "If they all say, no problem, judge, then, I think that, under the circumstances, since he says he didn't engage in a dialogue with any one, rather he just expressed his opinion, I think that that should be sufficient." R.T. 1483.  The court asked counsel if they believed each juror

should be questioned individually.  Although defense counsel originally thought individual questioning would be better, he agreed to group questioning when he learned that the judge did not intend to repeat what juror nine had said when questioning the other jurors.  R.T. 1484.

Seven of the jurors and two alternates indicated that they had heard juror nine make comments about the trial or individuals involved in the trial and two jurors indicated that they had overheard his comment during the previous recess.  Both of those jurors indicated that juror nine's comments had not impacted their ability to act fairly.  The court admonished the jurors not to discuss juror nine's comments or dismissal or to allow those factors to impact the way they approached the case.

Outside the presence of the jury, defense counsel renewed his motion for a mistrial based on juror nine's "ongoing misconduct." R.T. 1505.  The court denied the motion stating that it was "satisfied that his conduct hasn't affected or influenced the rest of the jurors."  R.T. 1506.  Barnes argues that the court erred when it failed to question the jurors individually and when it denied his motion for a mistrial.

The Sixth Amendment guarantees to the criminally accused a fair trial by a panel of impartial jurors.  U.S. Const. Amend. VI; see Irvin v. Dowd, 366 U.S. 717, 722 (1961).  "Even if only one juror is unduly biased or prejudiced, the defendant is denied his constitutional right to an impartial jury." Tinsley v. Borg, 895 F.2d 520, 523-34 (9th Cir. 1990) (internal quotations omitted), cert. denied, 498 U.S. 1091 (1991).  However, the Constitution

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

"does not require a new trial every time a juror has been placed in a potentially compromising situation." Smith v. Phillips, 455 U.S. 209, 217 (1982). The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. See id.

A petitioner is entitled to habeas relief only if it can be established that misconduct by the jury had "'substantial and injurious effect or influence in determining the jury's verdict.'" Lawson v. Borg, 60 F.3d 608, 612 (9th Cir. 1995)(quoting Brecht v. Abrahamson, 507 U.S. 619, 637-38 & n.9 (1993)); see Jeffries v. Blodgett, 5 F.3d 1180, 1190 (9th Cir. 1993), cert. denied, 510 U.S. 1191 (1994). In other words, a petitioner must establish that the error resulted in "actual prejudice." See Brecht, 507 U.S. at 637; see also United States v. Plunk, 153 F.3d 1011, 1023 (9th Cir. 1998), amended by, 161 F.3d 1195 (9th Cir. 1998), cert. denied, 119 S. Ct. 1376 (1999) (requiring "actual prejudice" on federal direct appeal).

Here, the court did conduct an investigation into the potential juror misconduct and took action by removing juror nine. Further, the court questioned the remaining jurors, found no prejudice and instructed them not to let juror nine's comments or his removal from the jury influence their decision. The State court's denial of additional relief on this claim is not contrary to or an unreasonable application of clearly established federal law. This claim does not provide grounds for granting the

1  petition.

2  VII. Motion to Substitute Counsel

3       Following the jury's verdict, Barnes filed a motion in pro per

4  to substitute counsel pursuant to People v. Marsden, 2 Cal. 3d 118,

5  124 (1970).[10]  The trial court allowed Barnes to present the reasons

6  for his motion and counsel to respond.  Barnes clarified that he

7  sought substitution of counsel for purposes of filing a motion for

8  a new trial and, should that motion be rejected, for sentencing,

9  and presented several reasons underlying his request.

10      First, Barnes indicated a potential conflict of interest based

11  on a conversation that counsel had with his next door neighbor, an

12  Oakland police officer, about the case.  Barnes stated that he

13  could not trust counsel based on his knowledge of that

14  conversation.  Barnes also noted a confrontation in which counsel

15  told him that he should have taken the plea agreement offered and

16  that he should not have committed the crime.  Second, Barnes argued

17  that counsel was ineffective based on several decisions made during

18  trial.  Barnes pointed to counsel's (1) decision not to file a writ

19  of mandate following the court's denial of a § 1368 hearing on

20  Barnes' competence to stand trial; (2) failure to inspect the car

21  before it was destroyed; (3) failure to call his investigator to

22  testify to impeach Mabrey; and (4) decision not to file a

23

24  _____

25      [10]In Marsden, 2 Cal. 3d at 124, the California Supreme Court
    held that the trial court deprived the defendant of his
26  constitutional right to effective assistance of counsel when it
    denied his motion to substitute new counsel without giving him an
27  opportunity to state specific examples of inadequate
    representation.

28                                      21

United States District Court
For the Northern District of California

Pitchess[11] motion to discover information from the personnel files of all of the officers involved in pursuing and arresting Barnes.

After hearing counsel's responses to Barnes' concerns, the court denied Barnes' request, citing the fact that counsel's conversation with his neighbor was not a breach of confidence, but rather an effort to collect useful information for the case, that Barnes had not demonstrated that his confrontation with counsel was evidence of counsel's inability competently to represent him, and the reasonableness of counsel's decisions with respect to each of the alleged instances of ineffectiveness. Barnes claims that the trial court both failed to conduct a Marsden hearing and erroneously denied his request to substitute counsel, in violation of his rights under the Sixth Amendment.

In evaluating Sixth Amendment claims on habeas review, "the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such." Wheat v. United States, 486 U.S. 153, 159 (1988). Thus, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is [not] to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Id. The Sixth Amendment guarantees effective assistance of counsel, not a "meaningful relationship" between an accused and his counsel. Morris v. Slappy, 461 U.S. 1,

_____

[11]A Pitchess motion is the procedural method established in Pitchess v. Superior Court, 11 Cal. 3d 531 (1974), and later codified by California Penal Code § 832.7 and California Evidence Code §§ 1043 and 1046, that allows for discovery of otherwise privileged personnel records.

United States District Court
For the Northern District of California

1   14 (1983).

2       Nonetheless, to compel a criminal defendant to undergo a trial

3   with the assistance of an attorney with whom he has become

4   embroiled in irreconcilable conflict is to deprive the defendant of

5   any counsel whatsoever.  United States v. Moore, 159 F.3d 1154,

6   1159-60 (9th Cir. 1998).  The denial of a criminal defendant's

7   motion for substitution of counsel therefore may violate his Sixth

8   Amendment right to counsel.  See, e.g., id. at 1160 (where

9   irreconcilable conflict existed between defendant and counsel,

10  trial court's failure to appoint substitute counsel was reversible

11  error); Brown v. Craven, 424 F.2d 1166, 1170 (9th Cir. 1970)

12  (refusal to substitute new counsel violated the Sixth Amendment

13  where relationship between defendant and particular public defender

14  had completely collapsed).  "Given the commands of Sixth Amendment

15  jurisprudence, a state trial court has no discretion to ignore an

16  indigent defendant's timely motion to relieve an appointed

17  attorney."  Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir. 2000)

18  (en banc).  "[I]t is well established and clear that the Sixth

19  Amendment requires on the record an appropriate inquiry into the

20  grounds for such a motion, and that the matter be resolved on the

21  merits before the case goes forward."  Id.

22      Barnes' claim that the trial court failed to conduct a Marsden

23  hearing does not give rise to a colorable claim for relief.  The

24  trial court gave Barnes a full opportunity to voice his complaints

25  about counsel's representation.  The trial court denied Barnes'

26  motion because it found that counsel's representation was adequate

27  and that Barnes' reasons for making his Marsden motion did not

28                                  23

United States District Court
For the Northern District of California

indicate that there was an irreconcilable conflict between himself and counsel.[12]

Because the record supports the trial court's conclusions, the Court finds that the denial of Barnes' <u>Marsden</u> motion did not constitute an unreasonable application of clearly established federal law.  This claim does not provide grounds for granting the petition.

VIII.   CALJIC Number 17.41.1

CALJIC number 17.41.1 instructs jurors to notify the court if "any juror refuses to deliberate or expresses an intention to disregard the law."  Barnes argues that the instruction "is patently invalid [because it] invades the province of the jury, interferes with the defendant's right to a unanimous jury exercising independent judgment, tramples on the defendant's and jurors' right to nullification, and blatantly misadvises the jury, directly and indirectly, as to its powers and its rights."  Traverse at 27.  However, as the State notes, this claim is precluded by <u>Brewer v. Hall</u>, 378 F.3d 952, 957 (9th Cir. 2004), where the Ninth Circuit held that "no Supreme Court case establishes that an instruction such as CALJIC 17.41.1 violates an existing constitutional right" and therefore upheld the denial of a

---

[12]The Court notes that Barnes re-filed his <u>Marsden</u> motion along with his pro per motion for a new trial, which the court allowed him to file to supplement the motion filed by counsel.  The trial court declined to re-hear the motion.  Clerk's Transcript (C.T.) 964.  However, the Court finds that the trial court's decision was based on its prior consideration of the motion and its assessment that there were no additional arguments presented.  Therefore, the Court finds that the State court's decision did not contravene <u>Schell</u>.

United States District Court
For the Northern District of California

1  State habeas petition on such grounds.  This claim does not provide
2  grounds for granting the petition.

3  IX.   Sentencing Error[13]

4      Barnes claims that his rights under the Fifth, Eighth and
5  Fourteenth Amendments were violated as a result of State court
6  sentencing errors.  Barnes claims that the trial court's sentencing
7  decision was an unreasonable application of clearly established
8  federal law, but cites only California law.

9  Barnes' primary claim of sentencing error pertains to the
10 application of California Penal Code §654, which provides: "An act
11 or omission that is punishable in different ways by different
12 provisions of law shall be punished under the provision that
13 provides for the longest potential term of imprisonment, but in no
14 case shall the act or omission be punished under more than one
15 provision."  Barnes maintains that "the trial judge had the
16 discretion to sentence petitioner to one term of 25 years to life
17 with the other counts to run concurrent" because each of his
18 offenses stemmed from one proceeding and were not tried separately.

19     Even if Barnes' State sentencing error claim were meritorious,
20 a claim of State sentencing error does not raise a federal
21 constitutional question.  <u>Lewis v. Jeffers</u>, 497 U.S. 764, 783
22 (1990).  An alleged violation of the California Penal Code

23

---

24     [13]Claims IX-XXII were not raised in Barnes' direct appeal.
   These claims were presented for the first time in his State habeas
25 petition, which the California Supreme Court denied without
   comment.  Because there is no reasoned State court decision on
26 these claims, as noted above, this Court must conduct an
   independent review of the record to determine whether the State
27 court clearly erred in its application of controlling federal law.

28                                    25

therefore is not cognizable in federal habeas corpus.  See Watts v. Bonneville, 879 F.2d 685, 687 (9th Cir. 1989) (alleged violation of § 654 is State law claim not cognizable in federal habeas under § 2254).  State sentencing courts must be accorded wide latitude in their decisions as to punishment.  See Walker v. Endell, 850 F.2d 470, 476 (9th Cir. 1987), cert. denied, 488 U.S. 926, 488 U.S. 981 (1988).  Generally, therefore, a federal court may not review a State sentence that is within statutory limits.  See id.  A State violates a criminal defendant's due process right to fundamental fairness only if it arbitrarily deprives the defendant of a State law entitlement.  See Hicks v. Oklahoma, 447 U.S. 343, 346 (1980). Barnes fails to state a claim under any constitutional provision.

In fact, Barnes has not even demonstrated that State law was misapplied.  Under California law, to permit multiple punishments "there must be evidence to support a finding the defendant formed a separate intent and objective for each offense for which he was sentenced."  People v. Coleman, 48 Cal. 3d 112, 162 (1989).  Here, the trial court rejected Barnes' request that his sentences for the two robbery counts be served concurrently because "exercising its discretion, [it] recognize[d] that these two offenses were committed in the same event, same set of operative facts, but they're against two separate victims."  C.T. 974.  There is no evidence to support the proposition that the trial court's sentencing decision was in excess of State law or was imposed arbitrarily.  Accordingly, Barnes fails to state a cognizable due process claim.

Barnes also claims for the first time in his traverse that the

26

application of California's three strikes provision to his case violated the ex post facto clause because the earlier offenses upon which the application was based occurred before the enactment of the three strikes law.  Because Barnes' three strikes claim in his State habeas petition was based only upon the Eighth Amendment, this ex post facto claim is unexhausted.[14]  See 28 U.S.C. § 2254(b).  Although the claim is unexhausted, the Court denies it on its merits.  See Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005) ("[A] federal court may deny an unexhausted petition on the merits . . . when it is perfectly clear that the applicant does not raise even a colorable federal claim.").

The Ninth Circuit has held that the application of a sentencing enhancement statute does not violate the ex post facto clause where the offense for which the punishment is imposed occurred after the statute's enactment, even where the prior offense upon which the enhancement is based occurred before the statute's enactment.  Brown v. Mayle, 283 F.3d 1019, 1040 (9th Cir. 2002), vacated on other grounds, 538 U.S. 901 (2003); United States v. Ahumada-Avalos, 875 F.2d 681, 684 (9th Cir. 1989).  Barnes does not raise a colorable claim under the ex post facto clause.  Therefore, the Court denies Barnes' petition for a writ of habeas corpus to the extent it is based on this claim.

---

[14]Although he includes the Eighth Amendment in the caption for this claim in his federal habeas petition, Barnes does not discuss it in the body of his petition.  In his State habeas petition, Barnes also attempted to challenge the underlying prior strikes on the grounds that he received ineffective assistance of counsel when defending those convictions.  This argument likewise is not sufficient to satisfy the requirement that he fairly present his ex post facto claim to the State courts.

27

1    X.    Faretta Motion

2         On November 1, 1999, following the verdict and shortly after

3    the trial court denied Barnes' Marsden motion, Barnes made a

4    Faretta[15] motion.  After an extensive colloquy with the court,

5    Barnes agreed to withdraw his Faretta motion, with the

6    understanding that he could file a motion for new trial on any

7    grounds that counsel was unwilling to raise, in particular a motion

8    based on ineffective assistance of counsel.  R.T. 1775.

9         In his first amended petition, Barnes argues that he "was

10   deprived of the right to reasonable representation and a fair

11   trial" based on the trial court's decision "to allow petitioner to

12   represent himself without warning him of the possible dangers

13   involved."  Petition at 42.  In his traverse, Barnes suggests that

14   his decision to accept the court's compromise was based on the

15   court's alleged refusal to offer "adequate access to the resources

16   necessary to conduct his own defense through other means."

17   Traverse at 30.

18        The Court finds that these are two separate bases for relief,

19   and that only the first, that the court allowed Barnes to represent

20   himself without warning him of the possible dangers involved, was

21   exhausted in State court.  See Ex. F at 42.  Because the trial

22   court did not grant Barnes' Faretta motion, this claim is without

23   merit.  In fact, it appears that the trial court made every effort

24   to ensure that Barnes could be represented by counsel but would

25

26        [15]In Faretta v. California, 422 U.S. 806, 835 (1975), the
     Supreme Court held that a defendant has a right under the Sixth and
27   Fourteenth Amendments to waive counsel and represent himself or
     herself.

28                                    28

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

also be allowed to bring some motions on his own to supplement the representation.  As stated above, the Court can deny an unexhausted claim that does not raise a colorable basis for relief.  Therefore, the Court also denies Barnes' unexhausted subclaim based on the trial court's alleged denial of the resources necessary for self-representation.  These claims do not provide grounds for granting the petition.

XI.  Juror Misconduct

During the lunch break on the third day of trial, Barnes' mother waited at a crosswalk with one of the jurors.  After exchanging greetings, the juror asked Barnes' mother if she was a reporter, stating that she recognized her.  After Barnes' mother informed juror who she was, the conversation ended.  The juror wrote a note, bringing the interaction to the court's attention.  The court showed the note to counsel.  The court characterized the interaction as "an on-the-street encounter with somebody who's been here in the courtroom, and it appears to be nothing more than somewhat inconsequential."  R.T. 623.  The juror confirmed that "nothing was discussed," and counsel on both sides agreed that no further inquiry was required.  Id.  Barnes contends that the trial court failed adequately to investigate the interaction and that he therefore was deprived of a fair and impartial jury.

As discussed above, the Sixth Amendment guarantees to the criminally accused a fair trial by a panel of impartial jurors.  U.S. Const. Amend. VI; see Irvin v. Dowd, 366 U.S. 717, 722 (1961).  There is no evidence or reasonable inference that the interaction between Barnes' mother and the juror had any effect or influence on

29

the jury's verdict.  Barnes argues that the fact that the juror recognized his mother indicated that she had seen newspaper or television reports of his case.  However, at voir dire, it was clear that many of the jurors had seen some media reports about the case and those who had indicated that it did not impact their impartiality.  Further, the Court specifically asked the juror if the interaction would effect her impartiality.  She replied that it would not.

Barnes fails to demonstrate that the interaction between the juror and his mother deprived him of a fair and impartial jury. This claim does not provide grounds for granting the petition. Because there was no basis for dismissing the juror following the interaction with Barnes' mother, the Court also denies Barnes' petition for a writ of habeas corpus to the extent it is based on a claim of ineffective assistance of counsel for failure to move for a mistrial following the interaction.

XII.  Prosecutorial Misconduct During Closing Arguments

Barnes further argues that he was deprived of his due process right to a fair trial based on four acts of prosecutorial misconduct during closing arguments.  He points to the prosecutor's (1) use of marks on the courtroom door to illustrate a point; (2) reference to the fact that Mabrey was not charged as an accomplice in the case; (3) reference to the fact that the judge walked with a limp; and (4) reference to Barnes' status as an ex-felon.

A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair."

30

United States District Court
For the Northern District of California

<u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986); <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982).  Claims of prosecutorial misconduct are reviewed "on the merits, examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process."  <u>Johnson v. Sublett</u>, 63 F.3d 926, 929 (9th Cir.) (citation omitted), <u>cert. denied</u>, 516 U.S. 1017 (1995).

The first factor in determining the prejudicial effect of misconduct is whether the trial court issued a curative instruction.  When a curative instruction is issued, a court presumes that the jury has disregarded improper argument and that no due process violation occurred.  <u>Greer v. Miller</u>, 483 U.S. 756, 766 n.8 (1987); <u>Darden</u>, 477 U.S. at 182.  A court may also take into account the following factors in determining whether misconduct rises to a level of a due process violation: (1) the weight of evidence of guilt, <u>United States v. Young</u>, 470 U.S. 1, 19 (1985); <u>United States v. Schuler</u>, 813 F.2d 978, 982 (9th Cir. 1987); (2) whether the misconduct was isolated or part of an ongoing pattern, <u>Lincoln v. Sunn</u>, 807 F.2d 805, 809 (9th Cir. 1987); (3) whether the misconduct related to a critical part of the case, <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972); and (4) whether a prosecutor's comment misstated or manipulated the evidence, <u>Darden</u>, 477 U.S. at 182.

Barnes does not demonstrate that any of the prosecutor's actions rises to the level of a due process violation.  Barnes' first claim of misconduct is that the prosecutor encouraged the jurors to conduct an improper experiment when he put marks on the

31

door to the courtroom.  The prosecutor put the marks on the door at five feet, five feet, six inches and six feet in order to demonstrate how difficult it is to estimate how tall a person is. After the prosecution finished its argument, defense counsel objected outside the presence of the jury and moved to dismiss the charges against Barnes.  The court denied the motion, stating that he considered the act to be "done for demonstrative purposes" rather than as an experiment or as encouragement for the jurors to conduct an experiment.  R.T. 1559.

Even if this reference to the height markings on the door was misconduct, Barnes has not demonstrated that it deprived him of due process.  The eyewitness identifications, which the prosecutor hoped to support with his reference to the height markings, were not the only basis on which the jury could find that Barnes was the individual in the bank.  The discovery of the disguise and money in the car in which Barnes was riding and Mabrey's testimony also tied him to the robbery.

Barnes next contends that the prosecutor's argument that Mabrey was not an accomplice was improper.  His petition cites the prosecutor's statement that "there's another instruction you're not given in this case, and that's instructions [sic] about Mabrey being an accomplice, because Mabrey is not an accomplice."  R.T. 1551.  The State contends that the prosecution made the reference in anticipation of the defense's attempt to cast doubt on Mabrey's testimony and to imply that he, not Barnes, was responsible for the robbery.  The prosecutor argued to the jury that if Mabrey had been an accomplice, the judge would have so instructed the jury and

United States District Court

For the Northern District of California

would have told them to distrust Mabrey's testimony and that the testimony would need to be corroborated to be believed. Because the judge had not given such an instruction, the prosecutor argued that Mabrey's testimony need not be corroborated. The prosecutor was correct that Mabrey's testimony did not need to be corroborated.

However, the prosecutor went on to state that the judge did not give the instruction regarding accomplice testimony "because Mabrey, by law, is not an accomplice." R.T. 1551. This argument improperly suggests that the court made a finding that Mabrey was not an accomplice and therefore could not have been the robber, eliminating one of Barnes' potential defenses. Nonetheless, even if this argument was improper, Barnes has not demonstrated that it deprived him of a fair trial. Eyewitnesses had testified that Mabrey was not the robber.

Barnes also argues that the prosecutor improperly pointed out that the judge was limping. This was to support the inference that Mabrey could not have been the robber because Mabrey was injured and walking with a limp at the time of the robbery. The prosecution made that argument in response to the defense's argument that, although none of the eyewitnesses testified that the robber was limping, many of them could not see the robber's legs because they were behind the counter. Therefore, the prosecution pointed out that the jury could tell that the judge was limping despite the fact that they could not see his legs behind the bench. Again, even if this was improper argument, there is nothing to indicate that it rendered Barnes' trial fundamentally unfair.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Barnes' final claim of misconduct is that the prosecution improperly referred to his prior felony conviction in closing argument. The trial court noted that the prosecutor twice "told the jury [Barnes] should be convicted for another felony," which was referring to the prior conviction "for a purpose other than what it's permitted to be used for." R.T. 1559-60. However, the court also noted that "it wasn't emphasized" and that it "[didn't] consider it to be egregious." Id. The Court finds that the prosecution's reference to Barnes' prior felony conviction did not render his trial fundamentally unfair. The jury was already aware of the felony convictions as stipulated for purposes of the charge of felon in possession of a firearm, which minimized the harmful impact of the prosecution's argument.

Because Barnes does not demonstrate that the prosecutor's actions, even if construed as misconduct, rendered his trial fundamentally unfair, his petition for writ of habeas corpus is denied to the extent it is based on this claim.

XIII.   Access to Courts

Barnes claims that the police officers' failure to report their use of force "in their initial and supplemental reports" deprived him of meaningful access to the courts. He also notes that, in discovery for his civil case against the officers, he received reports of other instances in which the officers used excessive force which were not disclosed to trial counsel. However, as discussed above, the officers' use of excessive force was not relevant to any defense presented by Barnes. Therefore, his petition for writ of habeas corpus is denied to the extent it

1   is based on this claim.

2   XIV.  Ineffective Assistance of Counsel

3       Barnes raises eleven claims of ineffective assistance of

4   counsel based on counsel's: (1) failure to inspect the car Barnes

5   was driving at the time of his arrest; (2) failure to investigate

6   and discover that the gun Barnes possessed was inoperable at the

7   time of the offense; (3) failure to move based on the use of

8   excessive force at the time of the arrest to suppress the evidence

9   gathered from the car; (4) failure to present evidence related to

10  Mabrey's prior testimony at another individual's trial; (5) failure

11  to object to hearsay in Mabrey's testimony; (6) alleged errors at

12  sentencing; (7) failure to raise a diminished capacity defense;

13  (8) failure to investigate or call witnesses; (9) failure to cross-

14  examine Mabrey or to introduce evidence of a tape-recorded

15  interview of Mabrey; (10) motion for a pretrial physical lineup;

16  and (11) failure to call Barnes' sister to impeach Mabrey's

17  testimony or to allow Barnes to testify in his own defense.

18      A.   Legal Standard

19      A claim of ineffective assistance of counsel is cognizable as

20  a claim of denial of the Sixth Amendment right to counsel, which

21  guarantees not only assistance, but effective assistance of

22  counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  The

23  benchmark for judging any claim of ineffectiveness must be whether

24  counsel's conduct so undermined the proper functioning of the

25  adversarial process that the trial cannot be relied upon as having

26  produced a just result.  Id.

27      In order to prevail on a Sixth Amendment ineffectiveness of

28
                                35

United States District Court
For the Northern District of California

counsel claim a petitioner must establish two things.  First, he must establish that counsel's performance was deficient, that is, that it fell below an "objective standard of reasonableness" under prevailing professional norms.  Id. at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient performance, that is, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id.  However, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  Id. at 690.  The Strickland framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis.  See Williams, 529 U.S. at 404-08.

B.    Failure to Inspect the Car

As discussed above, the car that Barnes was driving when he was arrested was destroyed before trial counsel inspected it.  Barnes argues that counsel's decision not to inspect the car earlier was error.  However, counsel made a strategic decision to delay inspection of the car until after hearing the testimony of the officers and made a reasonable effort to ensure that the evidence would be preserved until that time.  In moving to have the charges dismissed based on the destruction of the car, counsel argued to the trial court that he believed that there was a good chance that the prosecution would present officer testimony

regarding what they saw during their pursuit of Barnes.  He also stated that evidence related to the vehicle likely would be useful in cross-examining those officers.  However, counsel could not be sure of the best use of that evidence until the prosecution put on its case.  Therefore, counsel obtained the court order to preserve the vehicle and sent the investigator to see the car following the officers' testimony.

Even if Barnes could demonstrate that counsel's strategic decision was objectively unreasonable, he is unable to demonstrate that he was prejudiced by counsel's inability to examine the vehicle.  There were no charges related to the collision with the ranger's vehicle.  As the State court noted, little could be determined about the view of the inside of the car because the back windshield had been shot out, and many other factors, such as lighting, would be hard to recreate.  This claim does not provide grounds for granting the petition.

C.   Inoperable Gun

Barnes' first ineffective assistance of counsel claim is that counsel failed to investigate, and therefore failed to discover, that the gun was inoperable.  However, the record demonstrates that counsel was aware of this fact.  He used it to argue at the preliminary hearing and again immediately before trial that there was no probable cause to support a charge of assault on a police officer.  C.T. 93.  Prior to trial, the court set aside the assault charge and the prosecution amended the information to include the brandishing charge, which does not require an operable weapon.  Because counsel was aware that the gun was inoperable and

37

United States District Court

For the Northern District of California

used that fact to support his arguments, Barnes' claim of
ineffective assistance of counsel necessarily fails on this ground.

D.   Fourth Amendment Claim

Barnes also claims that counsel was ineffective for failing to
pursue a motion to suppress the evidence discovered in the car
following Barnes' arrest.  Barnes argues that counsel could have
demonstrated that the officers used excessive force in arresting
him and that the subsequent search of the car was therefore
prohibited by the Fourth Amendment.

A claim that defense counsel failed to litigate (or properly
litigate) a Fourth Amendment claim is not barred by <u>Stone v.
Powell</u>, 428 U.S. 465, 481-82, 494 (1976), which ordinarily bars
federal habeas relief on Fourth Amendment claims unless the State
did not provide an opportunity for full and fair litigation of
those claims.  <u>See</u> <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 373-83
(1986).

In order to establish ineffective assistance of counsel based
on defense counsel's failure to litigate a Fourth Amendment issue,
a petitioner must show that: (1) the overlooked motion to suppress
would have been meritorious, and (2) there is a reasonable
probability that the jury would have reached a different verdict
absent the introduction of the unlawful evidence.  <u>Ortiz-Sandoval
v. Clarke</u>, 323 F.3d 1165, 1170 (9th Cir. 2003) (citing <u>Kimmelman</u>,
477 U.S. at 375).

Although there was evidence counsel could have used to
establish that the police used excessive force between the time
Barnes crashed the car into the pole and the time they completed

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

the arrest, Barnes has not demonstrated that he could have succeeded on that basis on a motion to suppress any evidence found in the car.  Barnes cites no authority for the proposition that use of excessive force provides grounds for suppression of the results of a car search and the Court is aware of none.

Because there are no grounds upon which counsel could have filed a motion to suppress, Barnes cannot demonstrate prejudice based on counsel's decision not to pursue such a motion.  Further, he cannot demonstrate that counsel's decision was objectively unreasonable.[16]  This claim does not provide grounds for granting the petition.

E.   Welch Letter

Barnes also claims that counsel acted ineffectively when he did not present evidence related to a letter he received from another inmate against whom Mabrey had testified.  Following trial, counsel received a letter from David Welch, a death row inmate who had been convicted of killing several members of Mabrey's family, stating that Mabrey had testified at his trial and that the testimony was false.  Welch stated that he would be happy to testify on Barnes' behalf about Mabrey's history of false testimony.  The letter acknowledged that his claims based on the false testimony had been rejected by the courts that had considered

---

[16]Barnes also claims that he was deprived of an effective Fourth Amendment argument because one of two things must have occurred: either counsel failed to pursue information related to prior incidents in which the relevant officers used excessive force or the prosecution failed to furnish this information.  Because there is no basis for the Fourth Amendment argument, the failure to obtain or disclose the evidence could not have prejudiced Barnes.

39

them.

Barnes argues that counsel was ineffective for failing to follow up with Welch prior to filing a motion for new trial. However, to establish prejudice caused by the failure to call a witness, a petitioner must show that the witness was likely to have been available to testify, that the witness would have given the proffered testimony, and that the witness's testimony created a reasonable probability that the jury would have reached a verdict more favorable to the petitioner. <u>Alcala v. Woodford</u>, 334 F.3d 862, 872-73 (9th Cir. 2003).

Welch made clear that he would have testified on Barnes' behalf; however, there is little to indicate that his self-serving testimony would have aided Barnes' case. Courts have recognized that there are credibility problems associated with calling convicted felons as witnesses on a defendant's behalf. <u>See, e.g.</u>, <u>United States v. Harden</u>, 846 F.2d 1229, 1232 (9th Cir. 1988). Here, Welch could only have testified that he believed that Mabrey lied in prior testimony. Welch's credibility would be undermined by the fact that he had been convicted of killing Mabrey's relatives and further undermined by the fact that the State courts had already rejected his claims based on Mabrey's alleged untruthfulness.

A defense attorney has a general duty to make reasonable investigations or to make a reasonable decision that particular investigations are unnecessary. <u>See Strickland</u>, 466 U.S. at 691; <u>Turner</u>, 158 F.3d at 456. <u>Strickland</u> directs that "'a particular decision not to investigate must be directly assessed for

40

reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" Silva v. Woodford, 279 F.3d 825, 836 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 491).  A claim of failure to interview a witness cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel.  Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986).  When the record shows that the lawyer was well-informed and the defendant fails to state what additional information would be gained by the investigation he now claims was necessary, an ineffective assistance claim fails.  Id.

The Court finds that Barnes has failed to demonstrate that counsel acted ineffectively in deciding not to pursue Welch's offer to testify.  Further, the Court finds that there is no reasonable probability that the proffered testimony would have led to a new trial, or if it had, would have led to a different result at trial.

F.   Hearsay Testimony

Barnes' next claim is that counsel was ineffective when he failed to object to Mabrey's hearsay testimony that Barnes told him that he "hit one."  However, the statement is admissible under the party admission exception to the hearsay rule.  Cal. Evid. Code § 1220.  Counsel cannot be said to act ineffectively by deciding not to make a meritless objection, nor can the failure to make such an objection be prejudicial to Barnes.  See Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005) (failure to file a meritless motion is not ineffective); Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999) (to show prejudice under Strickland from failure to file a motion, petitioner must show that (1) had his counsel filed the

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

motion, it is likely that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is likely that there would have been an outcome more favorable to him).

Barnes further argues that Mabrey's testimony is unreliable, characterizing him as a "co-conspirator" and an "in-custody informant."  However, the credibility of the witness is left to the jury.  A jury's credibility determinations are entitled to near-total deference and may not be revisited by a federal habeas court except in the most exceptional of circumstances.  Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004).[17]

    G.   Sentencing

Barnes claims that counsel was ineffective at sentencing because "counsel argued for petitioner to receive 25 years to life. He argued that petitioner had committed the alleged robberies.  He was not cognizable with sentencing alternatives available to the court, to make certain that the court was aware of such alternatives."  Amended Petition at 17.  Barnes also asserts that "counsel erroneously advised petitioner to admit his priors."  Id.

The Supreme Court has not decided what standard should apply to counsel's performance in non-capital sentencing proceedings. Cooper-Smith v. Palmateer, 397 F.3d 1236, 1244 (9th Cir.), cert. denied, 126 S. Ct. 442 (2005).  Strickland declined to "'consider the role of counsel in an ordinary sentencing, which . . . may

---

[17]Further, the record demonstrates that Barnes instructed counsel not to cross-examine Mabrey, but only to ask one question. R.T. 727-32.  Therefore, any failure to impeach Mabrey was based on Barnes' instruction and cannot form the basis for an ineffective assistance of counsel claim.

require a different approach to the definition of constitutionally effective assistance'" and no later Supreme Court decision has done so, either.  Id. (quoting Strickland, 466 U.S. at 686).  However, as the State notes, counsel argued for the most lenient sentence available to Barnes based on his conviction.  Further, counsel asked the court to exercise its discretion to impose concurrent rather than consecutive sentences because each of the charges stemmed from the same events.  The Court finds that Barnes has failed to demonstrate that the State court's rejection of his claim that counsel was ineffective at his sentencing was an unreasonable application of federal law.

H.    Diminished Capacity Defense

Barnes argues that counsel was ineffective for failing to raise a diminished capacity defense and for failing to request a psychiatric evaluation during trial.  Barnes states that counsel was aware that he had taken "large amounts" of cocaine and "possibly" PCP at the time of the robbery and that he had been on psychiatric medications since suffering head injuries as a child. First Amended Petition at 17.  Further, Barnes alleges that trial counsel knew that he was forced "to attend trial on large quantities of psychiatric medication [which] rendered petitioner unaware of critical stages of his trial and court proceedings." Id.  Therefore, Barnes alleges that counsel should have raised a diminished capacity defense and should have requested a psychiatric evaluation at trial.

Barnes' claim with respect to the psychiatric evaluation fails because counsel did in fact request an evaluation which was

United States District Court
For the Northern District of California

performed.  On August 5, 1999, the trial court denied a defense motion pursuant to California Penal Code § 1368, which provides for a hearing into a defendant's mental competence to stand trial, and ordered Barnes referred "for evaluation re trial competency." C.T. 408.  On August 23, 1999, the trial court found that Barnes was competent to stand trial after reviewing the evaluation report and denied his motion pursuant to § 1368.  C.T. 411.  On September 14, 1999, the Court denied a subsequent § 1368 motion.  C.T. 447.

The State argues that Barnes' claim based on diminished capacity also fails, citing California cases holding that diminished capacity is not a defense to general intent crimes. Points and Authorities at 47.  While the brandishing offense is a general intent crime for which the diminished capacity defense is unavailable, robbery is a specific intent crime for which diminished capacity can be a defense.  People v. Hughes,  27 Cal. 4th 287, 340 (2002).

However, Barnes appears to base his diminished capacity claim on voluntary intoxication but does not present any evidence or allude to evidence that would demonstrate that he was so intoxicated as to negate a finding of specific intent to rob the bank.  The Court notes that nothing in the record, including the testimony of witnesses to the robbery, suggests that the robber was intoxicated.  Further, Barnes' theory at trial was that the prosecution could not prove beyond a reasonable doubt that he was the robber, not that he was unable to form the required intent to commit the crime.

This claim does not provide grounds for granting the petition.

44

**United States District Court**
For the Northern District of California

I.   Failure to Investigate or Call Witnesses

Barnes asserts that the police reports name over seventy-five witnesses to the events underlying his brandishing conviction and that "defense counsel made no attempt to contact any of them." First Amended Petition at 18.  The State, apparently relying on the claim's caption which refers to counsel's failure to call witnesses, alleges that Barnes' claim must fail because he has not established what the potential witnesses might testify about, whether they would have been available to testify or that their testimony would have a reasonable probability of impacting the outcome of his case.

However, Barnes' claim extends beyond the failure to call the witnesses at trial to counsel's failure to investigate.  As stated above, defense counsel has a general duty to make reasonable investigations or to make a reasonable decision that a particular investigation is unnecessary.  Strickland, 466 U.S. at 691; Turner v. Duncan, 158 F.3d 449, 456.  Therefore, the Court considers Barnes' claim that counsel failed to interview or contact the witnesses.

The Court finds that Barnes fails to demonstrate a reasonable probability that further investigation would have changed the outcome of his case.  Barnes argues that the witnesses would have supported his theories of self-defense and unconsciousness. However, as discussed above, it is undisputed that the brandishing offense occurred before the use of excessive force or any potential claim of unconsciousness.  As Barnes' counsel conceded at trial, he could not have raised those defenses to the brandishing offense.

45

**United States District Court**
For the Northern District of California

Therefore, counsel's decision not to pursue this line of investigation was not unreasonable.  This claim does not provide grounds for granting the petition.

> J.   Failure to Cross-Examine Mabrey or to Introduce Evidence of his Tape-Recorded Interview

Barnes argues that counsel was ineffective for failing to use a tape-recorded interview of Mabrey to impeach his testimony. Although the details of the interview are not clear from the record, counsel referred during trial to a tape-recorded interview conducted by a defense investigator.  Barnes does not specifically indicate how counsel might have used the tape to impeach Mabrey; however, it is clear from the record that counsel made a reasoned decision not to introduce the tape into evidence.

When the court was considering Barnes' <u>Marsden</u> motion, based in part on this claim, counsel indicated that there were two reasons he chose not to call the investigator who interviewed Mabrey to impeach his testimony.  First, counsel indicated that most of the inconsistencies were immaterial.  Therefore, he was unsure whether the court would allow him to introduce the evidence to impeach Mabrey on collateral matters.  Although he acknowledged that these inconsistencies "did go on a certain level to his credibility," he characterized the interview as "a two-edged sword," recognizing that there was information in the tape that "is consistent with and in fact in a couple instances goes further than what he said to the police and his testimony at trial, which may have in fact bolstered his credibility."  R.T. 1664.

46

As stated above, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690.  The Court finds that counsel's decision not to call the investigator or to introduce the tape as impeachment was a strategic decision, protected by Strickland.  Further, the Court notes that Barnes himself instructed counsel, against counsel's advice, to limit cross-examination to one question, and only during the defense's case was he recalled to be more fully cross-examined.  This claim does not provide grounds for granting the petition.

K.   Lineup

Barnes contends that counsel's decision to move for a pretrial physical lineup was unreasonable because he was still recovering from the injuries related to his arrest.  Further, Barnes claims that counsel was aware that he was "on a very large amount of psychiatric drugs and suffering from [post-traumatic stress disorder] at the time of the line-up."  First Amended Petition at 19.  He also notes that counsel later argued that the lineup he had requested prejudiced Barnes.  Therefore, Barnes argues, counsel acted unreasonably in requesting the lineup.

However, the test for ineffective assistance of counsel is whether counsel acted objectively reasonably at the time of the decision, "not whether another lawyer, with the benefit of hindsight, would have acted differently, but 'whether counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'"  Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998) (quoting Strickland,

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

466 U.S. at 687).  Therefore, counsel's later argument that the lineup prejudiced Barnes does not factor into the <u>Strickland</u> analysis.  The question is whether the State court applied <u>Strickland</u> unreasonably when it found that a reasonable attorney could have requested a lineup at the time Barnes' counsel made the request.

The Court finds that the State court's decision was not an unreasonable application of federal law.  Barnes' counsel might have made a strategic decision to have the physical lineup following the witnesses' inability to identify Barnes positively in the photo arrays.  As the State points out, counsel "was mostly right" because the witnesses only tentatively identified Barnes at the lineup.  This claim does not provide grounds for granting the petition.

L.   Failure to Call Barnes' Sister as a Witness or to Allow
     Barnes to Testify in his Own Defense

Barnes' final claim of ineffective assistance of counsel is based on counsel's failure to call Barnes' sister, Kim Scott, to impeach Mabrey or to allow him to testify on his own behalf. Barnes alleges that he and counsel agreed that Scott would testify in order to impeach Mabrey and that Barnes would then testify as well.

Barnes argues that his sister could have impeached Mabrey by testifying that Mabrey had been to her house, knew where she lived, and knew what kind of car she drove, contrary to his testimony and statements to the police.  Traverse at 46.  However, these discrepancies, like those in Mabrey's interview with the defense

48

investigator, are collateral and immaterial.  While her testimony, if admitted, might have gone generally to Mabrey's credibility, Barnes has not demonstrated that there is a reasonable probability that the jury would have reached a different decision if Scott had testified.

With respect to counsel's failure to call Barnes as a witness in his own defense, Barnes does not state that he told his attorney he wanted to testify.  The Ninth Circuit has held that a defendant's failure to indicate that he would like to testify when counsel fails to call him constitutes a waiver of the right to testify.  See, e.g., Horton v. Mayle, 408 F.3d 570, 577 (9th Cir. 2005); Dows v. Woods, 211 F.3d 480, 487 (9th Cir. 2000); United States v. Edwards, 897 F.2d 445 (9th Cir. 1990).

This claim does not provide grounds for granting the petition.

XV.  Sufficiency of the Evidence

Barnes' final claim is that there was insufficient evidence to sustain his conviction.  However, this claim simply alleges that the conviction was based upon circumstantial evidence and restates the claims regarding the police officers' use of excessive force.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  However, a federal court reviewing a habeas petitioner's claim that the evidence was not sufficient to support the State court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  Payne v. Borg, 982 F.2d 335, 338 (9th Cir.

United States District Court

For the Northern District of California

49

United States District Court
For the Northern District of California

1992), cert. denied, 510 U.S. 843 (1993).  Rather, the federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  See id. (quoting Jackson, 443 U.S. at 319).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt is the evidence insufficient to support the conviction.  See Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338; Miller v. Stagner, 757 F.2d 988, 992-93 (9th Cir.), amended, 768 F.2d 1090 (9th Cir. 1985), cert. denied, 475 U.S. 1048, and cert. denied, 475 U.S. 1049 (1986); Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir.), cert. denied, 469 U.S. 838 (1984).

Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction.  Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).  Moreover, if confronted by a record that supports conflicting inferences, a federal habeas court must presume that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution.  Jackson, 443 U.S. at 326.

Barnes fails to demonstrate that no rational trier of fact could have convicted him of robbery, brandishing a weapon at a police officer, or possession of a firearm.  Although the individual who robbed the bank was wearing a disguise and there were only tentative identifications of Barnes, the tentative identifications together with Mabrey's testimony and the fact that Barnes was riding in the car with the money taken from the bank and the disguise worn by the robber is a sufficient basis from which a

reasonable juror could infer that Barnes was the robber.  Further, it is undisputed that Barnes was the individual with the gun in the car.  Finally, it was stipulated at trial that Barnes had a prior felony conviction.  As discussed above, Barnes' defenses to the brandishing offense fail for a variety of reasons.  This claim does not provide grounds for granting the petition.

CONCLUSION

Based on the foregoing, the Court GRANTS Barnes' motion to enlarge time to file his traverse (Docket Nos. 21, 22) and has considered his traverse.  The Court DENIES Barnes' motion for an evidentiary hearing (Docket Nos. 21, 22) because he does not point to any unresolved factual disputes which, if resolved in his favor, would justify habeas relief.  The Court DENIES the petition for a writ of habeas corpus (Docket No. 10) on all claims. Judgment shall enter accordingly.


IT IS SO ORDERED.


Dated: 1/17/07

_____
CLAUDIA WILKEN
United States District Judge

**United States District Court**
For the Northern District of California